Thomas G. Nickens, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

314

Submitted on briefs January 2, 1985, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Robert B. Stewart, III*, for petitioner.

*Robert A. Greevy*, Chief Counsel, with him, *Arthur R. Thomas*, Assistant Chief Counsel, *Jay C. Waldman*, General Counsel, and *LeRoy S. Zimmerman*, Attorney General, for respondent.

Opinion by Senior Judge Barbieri, December 6, 1985:

Thomas G. Nickens appeals here an order of the Pennsylvania Board of Probation and Parole (Board) which denied him administrative relief from a Board parole revocation order. That revocation order revoked his parole and returned him to prison as a technical parole violator to serve eighteen months on backtime. We affirm.

The following facts are pertinent. Nickens was originally sentenced to a term of five to ten years in the Court of Common Pleas of Erie County as a result of his convictions for Robbery,[1] Criminal Attempt,[2] and Criminal Conspiracy.[3] The Board granted him parole on this sentence effective June 3, 1982 at which time he was released from the Erie Community Service Center (CSC). On November 10, 1982, two parole agents conducted a search of his residence which turned up a number of controlled substances and a sawed-off shotgun. The controlled substances were found in plain view, while the sawed-off shotgun

---

[1] 18 Pa. C. S. §3701.
[2] 18 Pa. C. S. §901.
[3] 18 Pa. C. S. §903.

was discovered in the closet of the bedroom which Nickens shared with his girl friend. Nickens was taken into custody and the Board charged him with violating general parole conditions 5A[4] and 5B.[5] Erie County authorities also charged him with possession of a Prohibited Offensive Weapon[6] and Former Convict Not to Own a Firearm.[7] Nickens was eventually acquitted of the new criminal charges following a jury trial.

On April 5, 1983, the Board afforded Nickens a parole Violation Hearing at the Erie County Prison before a Board hearing examiner. At that hearing, Nickens' defense counsel moved for dismissal of the parole violation charge pertaining to the possession of the shotgun on the basis of Nickens' acquittal of the related criminal charges. The examiner denied that motion and proceeded to take evidence from both the parole agent and Nickens. While Nickens admitted that both the narcotics and the sawed-off shotgun were found in his residence, he denied ownership of the narcotics and ownership and knowledge of the shotgun. On May 10, 1983, the Board revoked his parole and ordered him recommitted to prison to

[4] General parole condition 5A requires that parolees refrain from the unlawful possession or sale of narcotics and dangerous drugs and abstain from the use of controlled substances within the meaning of The Controlled Substance, Drug, Device and Cosmetic Act (35 P.S. §§780-101-780-144) without a valid prescription. 37 Pa. Code §63.4(5)(i).

[5] General parole condition 5B requires that parolees refrain from owning or possessing any firearms or other weapons. 37 Pa. Code 63.4(5)(ii).

[6] 18 Pa. C. S. §908. Possession of an unregistered sawed-off shotgun is also a violation of the National Firearms Act, 26 U.S.C. §§5845 & 5861(d), although there is no mention in the record that the Board informed the Bureau of Alcohol, Tobacco and Firearms of the discovery of the sawed-off shotgun or that any Federal criminal charges were filed against Nickens as a result of the discovery of that weapon in his bedroom closet.

[7] 18 Pa. C. S. §6105.

serve eighteen months on backtime for violation of general parole conditions 5A and 5B.[8]   Nickens filed a request for administrative relief with the Board which was denied on July 20, 1983 and this appeal followed.

In this appeal, Nickens contends that, (1) the Board is collaterally estopped from revoking his parole based on possession of a firearm where he was acquitted of the related criminal charges; (2) that the evidence does not support the finding that he violated his parole by being in possession of a firearm; (3) that the backtime mandated by the Board is excessive; and (4) that the revocation order itself is invalid in that all the evidence used against him was the product of the parole agents' warrantless search. We note that he does not contest that portion of the Board's order which revoked his parole for being in possession of narcotics.

In reviewing a Board parole revocation order, we are mindful that our scope of review is limited to determining whether necessary findings are supported by substantial evidence, an error of law committed, or whether any of the parolee's constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Cox v. Board of Probation and Parole*, 507 Pa. 614, 493 A.2d 680 (1985). Of course, we are also aware that it is the Board which must bear the burden of proving a violation of parole by a preponderance of the evidence. *Hossback v.*

---

[8] The fact that Nickens has already served the eighteen months backtime ordered by the Board does not moot this appeal since his maximum term does not expire until May 28, 1987 and the determination that he violated his parole by being in possession of a firearm could have future consequences for him during the remainder of his period of supervision by the Board. *See Johnson. v. Pennsylvania Board of Probation and Parole*, 505 Pa. 569, 482 A.2d 235 (1984).

*Pennsylvania Board of Probation and Parole,* 80 Pa. Commonwealth Ct. 344, 471 A.2d 186 (1984).

Nickens' initial contention is that his acquittal in criminal court of the criminal firearms charges relating to the sawed-off shotgun prevented the Board from revoking his parole on the basis of his alleged possession of that same shotgun. We have recently addressed this precise issue in *Hawkins v. Pennsylvania Board of Probation and Parole,* 88 Pa. Commonwealth Ct. 547, 490 A.2d 942 (1985), *allocatur denied,* No. 279 W.D. Allocatur Docket 1985 (November 12, 1985), in which we held that the principles of collateral estoppel outlined by the Pennsylvania Supreme Court in *Commonwealth v. Brown,* 503 Pa. 514, 469 A.2d 1371 (1983), do not apply to the Board's parole revocation proceedings.[9] For collateral estoppel to apply, the following four elements must be present: (1) the issue decided in the prior adjudication is identical with the one presented in the later action;

---

[9] We do not believe that this Court should extend to state parole revocation cases coming under the Board's exclusive jurisdiction the result reached by our Supreme Court in *Brown* where the prosecutor requested that the probation violation hearing be delayed until the outcome of the criminal prosecution. Among the distinctions between probation and state parole is that the trial judge generally also decides the probation violation and can, therefore, readily carry out the determination noted in Chief Justice Nix's opinion, *i.e.* whether the sameness of circumstances in the criminal case which resulted in an acquittal estops the Commonwealth from proceeding on the probation violation charge. We specifically recognize the obvious burden which this would impose upon the Board were it required to conduct an exhaustive independent examination of the criminal trial record, which we note is usually not transcribed in the event of a not guilty verdict, aside from creating a whole new area of litigation. On November 12, 1985, by a per curiam order, the Pennsylvania Supreme Court denied allocatur in *Hawkins* wherein we held that the collateral estoppel principles set forth in *Brown* were not applicable to the Board's parole revocation proceedings.

(2) there was a final judgment on the merits; (3) the party who is to be estopped was a party or in privity with a party to the prior adjudication; and (4) the party who is to be estopped had a full and fair opportunity to litigate the issue in question in the prior action. *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975).

In *Hawkins,* we noted the distinction between probation revocation proceedings which take place in common pleas courts and the Board's parole revocation proceedings which are civil administrative hearings. We also noted that in *Brown* the ultimate fact upon which the Commonwealth was seeking to revoke probation, *i.e.* the probationer's alleged participation in a robbery, was the *exact* same issue as was before the criminal trial court which resulted in the probationer's acquittal.[10] Here, as in *Hawkins,* the ultimate issue is whether the parolee's conduct constituted a breach of that condition of parole which required that parolees abstain from owning or possessing any firearms or other weapons. As we held in *Hawkins,* the elements of a violation of this parole condition are different than those required to be proven by the Commonwealth in a prosecution for Former Convict Not to Own a Firearm. 88 Pa. Commonwealth Ct. at 556, 493 A.2d at 948. We likewise hold that the elements required to be proven in a prosecution for possession

---

[10] We do recognize, however, that if the Board had charged Nickens with violating general parole condition 4 as a result of the discovery of the weapon in his closet, his acquittal in criminal court may preclude the Board from revoking his parole based on violation of general condition 4. General parole condition 4 requires that parolees obey all federal, state and local laws including the Liquor Code and the Vehicle Code. 37 Pa. Code §63.4(4). In such a case, the ultimate issue in both the criminal prosecution and the parole violation proceeding would be the same, to wit, whether Nickens conduct constituted a violation of the law.

of a Prohibited Offensive Weapon are not the same as those required to prove a violation of parole condition 5B. Since identity of issues is required for the application of collateral estoppel, that requirement is not met and the Board was not precluded from revoking Nickens' parole on the basis of his alleged possession of a sawed-off shotgun.

This holding is also consistent with our prior decision in *Dawson v. Board of Probation and Parole,* 17 Pa. Commonwealth Ct. 550, 333 A.2d 796 (1975), in which we held that a parolee's successful motion to arrest his judgment of conviction of federal firearms offenses did not preclude the Board from revoking his parole as a technical parole violator for violating that condition of parole which requires that parolees refrain from owning or possessing any firearms or other weapons. There, we specifically recognized that the basis for revocation of parole was the parolee's violation of the specific conditions of parole by possessing a firearm, not the ultimate conviction of the related criminal offense. *Id.* at 554, 333 A.2d at 798. We also note that in *Dawson,* the parolee was acquitted of the state firearms charges prior to being tried on the federal firearms charges. We also note that the Second Circuit Court of Appeals has held that a parole board can revoke parole for conduct which also gave rise to criminal charges of which the parolee has already been acquitted. *Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir. 1976); *United States ex rel. Carrasquillo v. Thomas,* 527 F. Supp. 1105, 1109 (S.D. N.Y. 1981), *aff'd per curiam,* 677 F.2d 225 (2d Cir. 1982). *See also, Baxter v. Vermont Parole Board,* 145 Vt. 644, 497 A.2d 362, 366 (1985).

We next turn to Nickens' contention that the evidence presented does not constitute substantial evi-

dence to support the Board's finding that he violated his parole by being in possession of a firearm. We disagree. The evidence presented by the parole agent was that on the day prior to the search he observed a tatoo on Nickens which read "God created men—Smith and Wesson made them equal," as well as a sign on the window of Nickens' leather shop which portrayed a revolver being pointed at the reader and words which read "Never mind the dog, beware of the owner." Those two items raised a suspicion in the mind of the agent that Nickens was fond of firearms and prompted the search the following day which turned up the sawed-off shotgun in Nickens' bedroom closet. "Substantial evidence" has been defined as that evidence which a reasonable mind might accept as adequate to support a conclusion. *Chapman v. Pennsylvania Board of Probation and Parole*, 86 Pa. Commonwealth Ct. 49, 484 A.2d 413 (1984). We consider the fact that the weapon was discovered in Nickens' bedroom closet coupled with the other obvious manifestations of an affinity for firearms displayed by Nickens to constitute substantial evidence to support the finding that he violated his parole by being in possession of a firearm. *See United States v. Shakleford*, 738 F. 2d 776 (7th Cir. 1984) (evidence which established that an illegal weapon was found in defendant's bedroom closet was sufficient to support the finding that the defendant knowingly possessed an illegal weapon in violation of the National Firearms Act). To be in violation of general parole condition 5B, a parolee need not be in actual possession of a firearm or other weapon, constructive possession is sufficient to warrant a violation of parole. *Cf. United States v. Wells*, 721 F.2d 1160 (8th Cir. 1983) (prosecution under National Firearms Act); *Commonwealth v. Dionisio*, 178 Pa. Superior Ct. 330,

116 A.2d 109 (1955) (prosecution for Possession of Instruments of Crime). "Constructive possession" occurs when a person does not have actual possession but instead knowingly has the power and intention at a given time to exercise dominion and control over the object, either directly or through others. *United States v. Daniel,* 527 F.2d 1147 (6th Cir. 1975). The circumstances present here are sufficient to support a finding that Nickens constructively possessed the sawed-off shotgun found in his bedroom closet. The Board, as the ultimate fact-finder, was free to accept or reject his denial of any knowledge of the presence of the weapon or his explanation of his business partner's accessibility to his living area. *Chapman,* 86 Pa. Commonwealth Ct. at 55, 484 A.2d at 416. Accordingly, we must reject his evidentiary challenge to the Board's findings.

We now turn to Nickens' contention that the backtime mandated by the Board, eighteen months, is excessive under the circumstances. He bases much of his argument on this contention upon the assumption that the Board's finding that he violated parole condition 5B must be reversed. Since we have held that the Board's finding as to general condition 5B is supported by substantial evidence and since he does not contest the Board's finding as to general condition 5A, the Board's revocation order is supported by substantial evidence. In addition, the eighteen months backtime ordered by the Board is within the presumptive range for multiple violations of general conditions 5A and 5B. 37 Pa. Code §§75.3 & 75.4. We have previously held that where the Board's revocation order is supported by substantial evidence and the backtime ordered is within the published presumptive ranges, we shall not interfere with the Board's discretion. *LaCourt v. Pennsylvania Board of Probation*

*and Parole,* 87 Pa. Commonwealth Ct. 384, 488 A.2d 70 (1985). Therefore, we must reject Nickens' contention that the backtime ordered by the Board was excessive under the circumstances.[11]

Finally, we address Nickens' contention in which he argues that the evidence supporting the Board's revocation order is invalid due to it being the product of a warrantless search. As with his other contentions, this, too, is without merit. It has long been held that the Fourth Amendment's exclusionary rule is not applicable to parole revocation procedures. *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973). Here, the parole agents were not acting in concert with the police, as was the case in *Commonwealth v. Brown,* 240 Pa. Superior Ct. 190, 361 A.2d 846 (1976), upon which Nickens relies, but were acting on their own. The search was undertaken to ascertain whether Nickens was in violation of his parole and not with the purpose of arresting him on new criminal charges. Accordingly, there was no error on the part of the Board in relying upon the evidence which resulted from its agents' warrantless search of Nickens' residence.

Having found the Board's order to be supported by substantial evidence, no errors of law committed

---

[11] We also stress that the weapon found in Nickens' bedroom closet was a sawed-off shotgun, a weapon which our courts have found to have no peaceful purpose and whose only conceivable use is for purposes which our society has found to be criminal. Our public policy reflects a strong determination to prevent persons from carrying or possessing such weapons. *See Commonwealth v. Stewart,* Pa. Superior Ct. , , 495 A.2d 584, 593 (1985); *Commonwealth v. Adams,* 245 Pa. Superior Ct. 431, 436, 369 A.2d 479, 482 (1976). We have also stated, in the context of a parolee, that we can think of no circumstances where a parolee would be justified in being in possession of a firearm. *O'Hara v. Pennsylvania Board of Probation and Parole,* 87 Pa. Commonwealth Ct. 356, 372, 487 A.2d 90, 98 (1985).

nor violations of constitutional rights, we shall affirm the Board's order.[12]

### ORDER

Now, December 6, 1985, the Order of the Pennsylvania Board of Probation and Parole at Parole No. 1799-M, dated July 20, 1983, which denied administrative relief to Thomas G. Nickens, is hereby affirmed.

---

[12] This matter was assigned to this Judge on September 10, 1985.

---

DISSENTING OPINION BY JUDGE PALLADINO:

I respectfully dissent.

I disagree with the majority's holding that the principles of collateral estoppel enunciated by the Pennsylvania Supreme Court in *Commonwealth v. Brown,* 503 Pa. 514, 469 A.2d 1371 (1983), do not apply to the Board's parole revocation proceedings. The premise of the doctrine of collateral estoppel is that once an issue of *fact* has been determined by a final judgment, that same *factual* issue cannot be relitigated between the same parties in any forum.

In a parole revocation hearing, just as in a probation revocation proceeding, to allow the Board to relitigate the factual issue of *whether the alleged conduct occurred* violates the doctrine of collateral estoppel because it allows the Commonwealth a second bite at the apple. It is this second bite which the *Brown* Court considered to be fundamentally unfair. *See* 503 Pa. at 528, 469 A.2d at 1378. The *Brown* Court recognized that it is not necessary for the Board to prove criminal conduct in order to revoke probation. *Id.* Because this is equally true in parole revocation cases it does not, as the majority opinion suggests, distinguish probation and parole revocation proceedings. *See* majority op. at 319-20.

I do not dispute the majority's position that the *legal* issues in the criminal trial and the parole revocation hearing are different: *i.e.*, whether a violation of the Uniform Firearms Act, Former Convict Not to Own a Firearm, 18 Pa. C. S. §6105, occurred versus whether parole condition 5B was violated. *See* majority op. at 319. Parole condition 5B does encompass a broader range of conduct than the Uniform Firearms Act. Therefore, the approach outlined in *Brown* must be utilized to determine whether the Board is collaterally estopped from finding that Nickens was in possession of a firearm. The *Brown* Court stated:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'

503 Pa. at 519, 469 A.2d 1373 (citations omitted).

Nickens asserts that the acquittal in the criminal trial was based upon a finding that he was not in possession of the shotgun. If this assertion is supported by the record of the criminal proceedings, the principles of collateral estoppel prohibit the Board from reaching a contrary conclusion. Unfortunately, the record of the criminal trial was not submitted as part of the record in this case. I would, therefore, remand this case to the Board for an examination of the record of the criminal trial to determine whether a rational jury could have grounded the acquittal on an issue other than possession.

I cannot agree with the majority's position that to require the Board to perform this examination of the

criminal trial record is too heavy a burden, *see* majority op. at n. 9, because I believe that this is what is required under *Brown* and the cases cited therein to preserve a parolee's constitutional rights. *See Brown,* 503 Pa. at 517-519, 469 A.2d at 1372-73. To the extent that prior cases of this Court hold that *Brown* does not apply to parole revocation proceedings, I believe they should be overruled.

Accordingly, I would vacate the Board's order and remand the case for an examination of the criminal trial record and a determination of whether or not the criminal acquittal was based on a finding that Nickens was not in possession of the shotgun.